**STERLING ALUMINUM PRODUCTS, INC., a corporation, Plaintiff,**

v.

**BOHN ALUMINUM AND BRASS COR-PORATION, a corporation, Defendant.**

**No. 18847.**

United States District Court
E. D. Michigan, S. D.

Sept. 30, 1960.

As Amended Oct. 11, 1960.

Alfred E. Wilson, Smith, Wilson, Lewis & McRae, Dearborn, Mich., for plaintiff.

John H. Bruninga, St. Louis, Mo., of counsel.

Rockwell T. Gust, Butzel, Eaman, Long, Gust & Kennedy, Detroit, Mich., for defendant.

Karl B. Lutz, Brown, Critchlow, Flick & Peckham, Pittsburgh, Pa., of counsel.

FREEMAN, District Judge.

This is an action for infringement of Letters Patent No. 2,771,328 issued to W. N. Wainwright, et al., on November

20, 1956, with related claim of unfair competition. Defendant's answer alleges that the patent is invalid, and by way of counterclaim, seeks a declaratory judgment declaring the patent invalid and void in toto.

The patent in issue is for a Piston Ring Groove Protector. According to the specification, aluminum pistons generally are provided with ring grooves into which are placed piston rings usually of iron or steel; the rapid reciprocation of the piston causes the rings to hammer against the faces of the ring grooves, and such hammering in turn makes the rings loose and therefore subject to leakage of gases past the rings; and eventually, the hammering results in such wear that the pistons have to be remachined to take oversized piston rings.

It is recognized in the specification that, in order to overcome these difficulties, ring groove protectors have been utilized in the art. It is stated, however, that such protectors are difficult to anchor "and in most cases will work loose so that there will be leakage around that band." The specification then goes on to state:

"One of the objects of this invention, therefore, is to provide a piston in which the above described drawbacks are practically overcome."

As further repeatedly stated by plaintiff's counsel in his oral arguments and briefs, the core of the invention in issue lies in the secure mechanical interlock between the ferrous groove protector and the aluminum piston body.

According to the patent, such interlock is achieved by casting an aluminum piston around a ferrous protector disc having recesses along one of its margins or intermediate the margins of such dimensions that the aluminum will flow through such recesses and, upon cooling, due to the differential in the coefficient of contraction, will grip the protector and tightly "hug" it in the piston body.

The patent in issue contains fourteen claims covering various embodiments of the alleged invention. Considered together, claims 2 and 11 are representative of all the claims and provide:

"2. A piston, comprising, an aluminum body provided with a packing ring-receiving groove, and an annular disc of a metal harder than aluminum and extending around said body axially adjacent said groove and radially within the aluminum body, the outer margin of said disc extending into said groove to face the same, *one of the margins of said disc having recesses* extending circumferentially therealong and therethrough and said disc being formed to cause the aluminum to flow axially through said recesses, said recesses being of sufficient dimensions circumferentially and radially of said disc to permit molten aluminum to flow therethrough and said recesses being positioned radially with respect to the outer margin of said disc and so formed that upon solidification the aluminum will shrink radially inwardly on said disc in order to cast-anchor said disc in said body." (Emphasis supplied.)

* * * * * *

"11. A piston, comprising, an aluminum body provided with a packing ring-receiving groove, and an annular disc of a metal harder than aluminum and extending around said body axially adjacent said groove and radially within the aluminum body, the outer margin of said disc extending into said groove to face the same, *said disc having closed recesses radially intermediate said margins* and extending circumferentially therealong and therethrough and said disc being formed to cause the aluminum to flow axially through said recesses, said recesses being of sufficient dimensions circumferentially and radially of said disc to permit molten aluminum to flow therethrough and said recesses being positioned radially with respect to the outer margin of said disc and so formed that upon solidi-

fication the aluminum will shrink radially inwardly on said disc in order to cast-anchor said disc in said body." (Emphasis supplied.)

Since defendant admitted infringement with respect to discs with outside recesses if the patent is valid, the major issues as developed by the pretrial order, the trial, the oral arguments and the briefs are:

1. What claims of the patent are in issue?

2. What are the elements in this combination patent?

3. Does the supposed invention lie in a new and distinct mode of operation of a combination of old elements or is one of the elements novel?

4. Is there any secondary evidence of invention?

5. Does the statutory presumption of validity apply in this case?

6. Is defendant guilty of unfair competition because of copying?

### Claims in Issue

The complaint in this cause alleges infringement of all 14 claims of the patent. Infringement is denied in defendant's answer and, as has already been stated, by way of counterclaim, defendant seeks a declaratory judgment declaring the patent invalid and void in toto. Subsequently, plaintiff filed a document entitled "Plaintiff's Statement as to Claims" wherein it is stated that "plaintiff will rely upon claims 2, 6, 7, 10 and 14 of Patent No. 2,771,328, as infringed by defendant". Beginning with its trial brief, plaintiff asserted that it wished to restrict this case to claims 7 and 10 and desired to withdraw all other claims from consideration by this court. Defendant has consistently objected to this assertion and contends that all claims are in issue and are properly before the court.

■ It clearly appears that all of the claims of this patent were put in issue by the pleadings. The fact that plaintiff itself put the whole patent in issue by failing to specify any particular claims in its complaint created an "actual controversy" with respect to all claims within the meaning of 28 U.S.C.A. § 2201 when defendant denied infringement and alleged invalidity of the whole patent in its answer. Having done so, plaintiff cannot now deprive defendant of its right to have all claims adjudicated simply by withdrawing all but two of the fourteen claims. (For an extensive discussion of this problem, see Kawneer Co. v. Pittsburgh Plate Glass Co., D.C.W.D. Mich.1952, 103 F.Supp. 671.) The court further notes that although most of the evidence in this case was directed to only one of the nine embodiments disclosed in the patent drawing, plaintiff itself asserted in its Reply Brief (pp. 21–31) that this particular embodiment (figs. 4 and 5 of the patent drawing) is "covered" by 11 of the 14 claims of this patent.

. The court consequently concludes that, all the claims having been put in issue, the defendant is entitled to an adjudication of the validity of all 14 claims.

### Elements of Patent

The patent in issue broadly relates to the art of protecting the faces of piston ring grooves from damage likely to be caused by the hammering of the ring in the reciprocating piston. As already pointed out, the specification states that one of the major problems intended to be solved by the alleged invention is to securely anchor the protector into the piston and thus prevent damage caused by any loosening of the protector.

Both parties have characterized the patent in issue as a combination patent. They do not agree, however, as to what are the elements of the patent. Defendant in its Trial Brief alleges that the combination consists of three elements (p. 22):

(1) An aluminum piston;

(2) A ring groove protector;

(3) Interlock recesses.

The plaintiff has failed to make clear its position with respect to the elements in this combination patent. The only indication of what plaintiff's position

*might be* appears at p. 20 of its Reply Brief, where it is stated that claim 1 of the patent covers two elements:

(1) The aluminum piston;

(2) An annular, ferrous disc, having seven specific characteristics.

An analysis of the claims shows that all 14 claims disclose a combination of three basic elements, viz.:

(1) An aluminum piston;

(2) An annular disc (described either as being "ferrous" or "of a metal harder than aluminum");

(3) Recesses in the disc of sufficient dimension to permit molten aluminum to flow therethrough.

Claim 14 additionally discloses locating tabs or tongues on the outer margin of the disc (to permit locating such disc in the mold during casting of the piston).

After the disc has been placed in the mold and the piston has been cast around the disc, the first three elements allegedly cooperate and bring about an aluminum piston having a hard ring groove protector which is firmly anchored in such piston by mechanical means.

The court therefore concludes that the patent in issue discloses a combination of four elements:

(1) An aluminum piston;

(2) An annular disc;

(3) Anchoring recesses;

(4) Locating tabs or tongues.

### The Alleged Invention

In defense of this action, defendant has cited 10 prior art patents and one advertisement appearing in a trade journal:

| | |
|---|---|
| Givaudan (French) | 455,539 |
| MacDonald (British) | 251,127 |
| Mahle | 1,979,335 |
| Nelson | 1,995,746 |
| Nelson | 2,006,008 |
| Venner | 2,240,968 |
| Hepworth (British) | 548,400 |
| Howlett (British) | 642,042 |
| Stevens | 2,550,879 |
| Daub | 2,685,729 |

Advertisement appearing in Automotive Industries, November 1, 1951, hereinafter referred to as "Zollner Ad".

Defendant contends that these prior art references anticipate all of the elements of the combination in issue and, further, that such combination of old elements is merely an aggregation and does not perform any new or different function or operation than that theretofore performed or produced by them.

Plaintiff, again, failed to make clear its position with respect to whether or not the elements, or any of them, are novel, whether the invention lies in a combination of old elements or whether the patent discloses a novel element *and* a combination having inventive status. In fact, the record and briefs in this case disclose that plaintiff has taken an inconsistent position with respect to these questions.[1]

Be that as it may, the court is of the opinion that the prior art cited clearly

1. Transcript of closing arguments, p. 524:
"So, in the Sterling we have actually a true combination in which the aluminum of the piston cooperates with the ring groove protector to get a result, namely a firm mechanical lock. Now, that is the thing. That is what our case is as far as the patent is concerned."
Plaintiff's Brief after Trial, pp. 40 and 41:
"There can be no doubt but that the Sterling piston is for a combination in which the elements cooperate in a distinctive manner to produce by their joint action something entirely new in this art.
* * * Where the patent or patent in suit is for a patentable combination, then the mere fact that the elements may be old or in a different relation than in the patent, that does not invalidate the patent."
Plaintiff's Reply Brief, p. 35:
"Here all of the elements of the Sterling patent were not old, but the annular disc of Fig. 4 of Sterling's patent and indeed of the other embodiments was new."
Other equivocal indications of plaintiff's position on this question appear in Plaintiff's Brief after Trial, p. 8, Plaintiff's Trial Brief pp. 18 and 19, and Plaintiff's Reply Brief, p. 40.

discloses that three of the four elements were anticipated:

(1) Aluminum piston—disclosed in all prior art patents and Zollner Ad;

(2) Ferrous annular disc—disclosed by Givaudan, Hepworth, Howlett;

(3) Locating tabs (or tongues)—disclosed by Daub.

The principal questions before the court therefore are:

(1) Does the prior art disclose anchoring recesses of sufficient dimensions to permit molten aluminum to flow therethrough or would such recesses be obvious to one skilled in the art?

(2) If so, does the combination of old elements in the patent in issue constitute invention?

Defendant urges that anchoring recesses as disclosed by the patent in issue are anticipated by Givaudan, Hepworth, Howlett, MacDonald, Venner, Nelson '008, and the Zollner Ad.

The Givaudan patent (French, No. 455,539) clearly discloses a combination of an aluminum piston and a piston ring groove protector disc of a metal of necessary hardness. The patent drawing does not show anchoring "recesses". The pertinent language in the specification relating to "recesses" is:

"This sheath may simply consist of two circular, flat metal rings, * * * solid or *perforated* * *." (Emphasis supplied).

The "résumé" states:

"Adherence between the parts introduced in this manner and the piston metal is facilitated by means of *embossments or of cavities* contrived or formed on the surfaces in contact." (Emphasis supplied.)

■ In order to make the "perforations", "embossments" and "cavities" interchangeable with the "recesses" of the patent in suit, an extremely broad construction of these terms would have to be applied. Regardless of such construc-

tion, Givaudan does *not* clearly disclose the idea of utilizing the differential of the coefficient of contraction of the two metals together with such "embossments" or "cavities" in order to achieve a firm mechanical lock. In view of the rule in this Circuit that foreign patents must be strictly construed (National Latex Products Co. v. Sun Rubber Co., 274 F.2d 224, 1959), this court concludes that Givaudan does *not* anticipate the anchoring recesses disclosed by the patent in suit.

Hepworth (British, No. 548,400), by the same token, does not anticipate the recesses of the patent in suit either in the patent drawing or by disclosing in claim 15 a "piston ring carrier [comprising] a sheet metal annulus having a substantially plane outer peripheral zone which forms a side/wall of a piston ring groove, and an inner peripheral zone which is embedded in the piston body and is *corrugated or similarly formed* so as to provide a key to secure the annulus to the piston body when the latter is cast therearound." (Emphasis supplied.)

The Howlett patent (British, No. 642,-042) does not show anchoring recesses in the patent drawing. In the specification, however, it is stated that

"the ring carriers may be of any desired cross-section and may be formed with lugs, projections, flanges, enlargements, holes or recesses at their inner peripheral regions to serve as keying means between the ring carrier segments and the piston." (P. 4, ls. 9–15).

In spite of the fact that this language includes "holes or recesses", it must be noted that the patent specifically provides for enclosing the carrier segments into the piston through chemical bonding by fusion of the piston material with the treated surfaces of such carrier segments. In addition, the patent clearly shows that Howlett proposed to solve the problems created by the different coefficients of expansion of the two metal components by slitting the ring into seg-

ments. It therefore appears that instead of *utilizing* such different coefficients together with the recesses in order to cast-anchor the carrier segments, Howlett viewed the difference in the coefficients as a *problem* which he solved by slitting the ring and by bonding the segments. Whatever the purpose of the "holes or recesses" designed to "serve as keying means" might be, the court concludes that Howlett does not show the anchoring recesses disclosed by the patent in issue.

The remaining three prior art patents and the Zollner Ad not only disclose perforations or recesses, but specifically teach the idea of permitting the piston metal to flow through such perforations or recesses and of utilizing the relatively greater shrinkage of aluminum upon cooling to anchor the protector in the piston body.

The MacDonald patent (British, No. 251,127) in the drawing discloses a piston ring carrier anchored in the piston by means of a perforated flange extending into the piston head. In the specification, MacDonald states:

> "The shaping of the flange or flanges may be such that slots or perforations are formed to allow the piston metal to bond together through such perforations during the casting process." (P. 2, ls. 28–41).

Plaintiff contends that MacDonald is inapplicable because the "slots" or "perforations" are in a flange attached to the ring carrier rather than in a disc as disclosed in the patent in suit. This argument is without merit. All the prior art references are combinations. The question before the court is not whether any one prior art combination discloses *all* the elements of the patent in suit, but rather whether such prior art combination discloses *any* of the elements of the patent in suit which could be combined with other prior art disclosures to achieve the combination in issue here. Such a combination of references is not only permitted by the law

(Even-Cut Abrasive B. & E. Corp. v. Cleveland Container Co., 6 Cir., 1949, 171 F.2d 873; Royal Patent Corp. v. Monarch Tool, 6 Cir., 1953, 203 F.2d 299), but is a logical necessity in order to determine whether or not invention is present under our patent statutes.

Nelson, 2,006,008, and Venner, 2,240,-968, relate to aluminum pistons having sheet metal parts (struts) of a metal harder than aluminum embedded in the piston body in order to control the thermal expansion and curvature of the piston body. According to the drawings and specifications, these struts are mechanically locked in the piston body by providing outside recesses in such struts

> "into which the casting metal may flow during casting so as to form a secure interlock between the casting and the elements 12." (Venner, p. 1, col. 2, ls. 41–44).

Although Nelson and Venner do not relate to "piston ring groove protectors", these patents clearly teach the method of anchoring a metal disc or segments thereof in an aluminum piston by way of recesses into which the aluminum can flow so as to firmly grip such disc or segments upon cooling and contraction of the aluminum. Since Nelson and Venner as well as the patent in suit relate to the piston art, and since they all face up to the problem of anchoring a hard metal part in the aluminum of the piston, the court is of the opinion that it would be obvious to one skilled in the art to apply the recesses utilized in anchoring the piston struts in the piston body to the anchoring of the groove protectors in the piston head.

The last reference cited by defendant is the Zollner Ad. This reference discloses an aluminum piston having a ring groove protector of a material harder than aluminum which is anchored in the piston both by a metallurgical bond and a mechanical interlock. The latter is obtained by permitting molten aluminum to flow through openings analogous to "recesses" in the protector ring. Although the ring is not a simple disc as in the pat-

ent in suit, the mechanical interlock shown is clearly the same as taught by MacDonald, Nelson and Venner.

At this point, it must be noted that the various embodiments of the patent in suit broadly disclose recesses on the inside, outside and intermediate the margins of the disc. Although plaintiff argued that there was a significant difference in where the recesses in the various embodiments are located, plaintiff admitted that there was no evidence that any location of recesses is superior over any other location.[2]

■ Since the specification of the patent in suit itself in effect describes the various locations of the recesses as being equivalent, the court concludes that no patentable difference has been shown to exist in placing the recesses on the outside of the disc as against placing them on the inside or intermediate the margins of the disc. The court, therefore, is of the opinion that the anchoring recesses of the patent in suit are clearly anticipated by the perforations of MacDonald and the recesses of Nelson, Venner and the Zollner Ad.

All the elements being old, and absent any patentable significance in the particular location of the recesses, the final question to be determined is whether or not inventive skill was involved in combining such old elements in the patent in suit.

As was repeatedly stated by plaintiff and as is abundantly clear from reading the patent in suit, the essence of the alleged invention lies in the mechanical interlock brought about, in part, by the combination of particular recesses with an annular ring groove protector disc.

In spite of plaintiff's assertion of patentability, the record does not contain any evidence that this combination offers a "distinctive new mode of operation". Even though the patent in issue may provide for a simpler and more economic product than that disclosed in pertinent prior patents, it is evident that the combination results in nothing more than the aggregation of its parts, all the elements performing exactly the same functions taught by the relevant prior art.

The law with respect to patents disclosing a combination of old elements was only recently stated by the Court of Appeals for this Circuit in Bede v. Baker & English, Inc., 1960, 274 F.2d 833, at 839, wherein the court said, citing from General Motors Corp. v. Estate Stove Co., 6 Cir., 1953, 203 F.2d 912:

> "The combination of old parts or elements, in order to constitute a patentable invention, must perform or produce a new and different function or operation than that theretofore performed or produced by them; it is not sufficient that the combination be superior to what went before in producing a more convenient and more economical mechanism."

In accord with the above, the court is of the opinion that the combination in the patent in issue has not been shown to "perform or produce a new and different function or operation than that theretofore performed or produced by them" and, therefore, does not constitute a patentable invention.

### Secondary Evidence of Invention

The conclusion reached above is entirely consistent with the "indicia of

---

2. During the closing arguments, the following colloquy transpired (Tr. p. 694):
"The Court: What difference does it make whether it [referring to anchoring recesses] is on the outside of the disc? Does it make any difference whether it is on the outside or in the middle?
"Mr. Bruninga: Oh yes, oh yes.
"The Court: Why?
"Mr. Bruninga: On the outside would give you better shrinkage, a better shrinkage effect because you have it right on the outside and you have all those—
"The Court: Is there any evidence of that in the record?
"Mr. Bruninga: No, but you can see that would be a better construction. There has been nobody who said either way."

invention" alleged by the plaintiff. As pointed out by defendant, the "indicia" of ease and cheapness of manufacture, simplicity, and commercial success were all disposed of by the Court of Appeals in this Circuit in Bede v. Baker & English, Inc., supra [274 F.2d 836], in the following language:

"It may be assumed that appellants' apparatus embodied a more convenient, compact, economical, and commercially-successful paint heater than had theretofore been made and offered to the public. But all the elements of Bede's patent in suit were old, and all functioned in the same way as they had always functioned in other constructions."

■ Although the issuance of a license by the plaintiff to another piston manufacturer is some evidence that such manufacturer believed the patent to be valid, that fact is not controlling in view of the conclusion reached by the court. The weight of this "indicium" is further greatly weakened by the fact that the license was issued after some piston molds had been shipped from the plaintiff to the manufacturer on orders from one of the biggest customers of the plaintiff.

With respect to the allegation of a "long-felt want", it appears that the record does not contain any evidence in support thereof. Nevertheless plaintiff has asked the court to infer such a want from the respective dates and the number of prior art patents in existence. Without going into an extensive discussion of this question, it need only be pointed out that the uncontroverted evidence discloses that no problem with respect to piston ring groove protectors has ever existed in passenger cars; that the problem arose only recently in diesel and truck engines, due to the increased speed and compression, and that it was immediately solved by various piston manufacturers. The court consequently finds that the patent in issue did not solve any long-standing problem, but merely used known mechanical principles to anchor the old disc protector in a piston.

■ The evidence clearly indicates that the defendant actually copied the plaintiff's device. Under the proper circumstances, such copying may be a strong indication of invention. In the present case, however, defendant's copying cannot make plaintiff's device patentable, when invention is clearly lacking.

### Presumption of Validity

Defendant contends that no presumption of validity exists with respect to the patent in issue because of certain misrepresentations allegedly made by plaintiff's counsel to the patent examiner in the course of the patent prosecution. After careful consideration, the court concludes that this contention is without merit.

■ It is well recognized, however, that there is no statutory presumption of validity over the prior art which the examiner did not consider (DeBurgh v. Kindel Furniture Co., D.C.Mich., 125 F. Supp. 468, affirmed 6 Cir., 229 F.2d 740, certiorari denied 352 U.S. 823, 77 S.Ct. 30, 1 L.Ed.2d 47).

In the prosecution of the patent in issue, only Givaudan, Hepworth and Daub were applied by the examiner, while no reference can be found to Venner, Nelson '008, and the Zollner Ad. Although MacDonald was made of record, it was never applied or discussed either by the examiner or counsel for the patentee.

The court, therefore, finds that the statutory presumption of validity has been overcome by the new references, MacDonald, Venner, Nelson and the Zollner Ad, which disclose the very feature claimed to be novel in the patent in issue.

### Unfair Competition

Plaintiff having admitted that the issue of unfair competition becomes moot if the patent be found invalid (Tr. 524), the court deems it unnecessary to discuss this issue.

### Findings of Fact and Conclusions of Law

The court, therefore, makes the following findings of fact and conclusions of law:

1. All fourteen claims of the Wainwright Patent 2,771,328 are in issue and are properly before the court.

2. The elements disclosed by the patent in issue are

(1) an aluminum piston;

(2) an annular disc of a metal harder than aluminum;

(3) anchoring recesses in the disc of sufficient dimension to permit molten aluminum to flow therethrough;

(4) locating tabs or tongues.

3. All four elements of the patent in issue are anticipated by the prior art.

4. Element (2) of Finding No. 2 (an annular protector disc of a metal harder than aluminum) is old in the art, as shown by Givaudan, Hepworth and Howlett.

5. The core of the invention in issue lies in providing a secure mechanical interlock between the ferrous protector disc (old in the art) and the aluminum piston body (also old in the art).

6. The anchoring recesses in particular are anticipated by MacDonald (British) 251,127, Nelson 2,006,-008, Venner 2,240,968, and the Zollner Advertisement appearing in "Automotive Industries", November 1, 1951.

7. It would have been obvious at the time of the alleged invention of the patent in suit to a person having ordinary skill in the art, to substitute anchoring recesses as mentioned in Finding No. 6 for the means disclosed to fasten the protector discs of Givaudan, Hepworth or Howlett.

8. Foreign patents must be scrutinized with care.

9. It is proper to combine prior art references in considering the validity of a combination patent.

10. The patent in issue discloses embodiments with recesses on the inside, outside, and intermediate the margins of the disc, and describes these various locations of the recesses as being equivalent.

11. The location of the recesses (inside, outside, or intermediate the margins) on the disc has not been shown to have patentable significance.

12. The elements in the combination of the patent in issue do not perform a new and different function than that theretofore performed by them.

13. The combination of old elements in the patent in issue does not constitute a patentable invention.

14. MacDonald, Nelson, Venner, and the Zollner Ad were not considered or applied by the patent examiner.

15. The statutory presumption of validity is rebutted by the new prior art references in Finding No. 14.

16. No long-felt want for the device shown by the patent in issue has been established.

17. Other "indicia of invention" are without weight in view of the clear invalidity of the patent.

18. Defendant has copied the device disclosed by the patent in issue.

19. Defendant has infringed all claims except claims 3, 11 and 12 of the patent in issue.

20. Defendant has fully carried the statutory burden of establishing invalidity of the patent in issue.

21. All claims of Letters Patent 2,771,328 are invalid for lack of invention.

Pursuant to the above findings of fact and conclusions of law, the complaint must be dismissed and judgment must be entered on defendant's counterclaim in favor of defendant.