**POPCORN–IN–OIL COUNCIL, INC.,**
Plaintiff,

v.

**WYNDALL'S SUPER MARKET, INC.,**
Defendant,

and Hesmer Foods, Inc., Intervener
Defendant.

**Civ. A. No. 923.**

United States District Court
W. D. Kentucky,
at Owensboro.

Jan. 15, 1964.

Ridley M. Sandidge, Owensboro, Ky., Edmund C. Rogers, St. Louis, Mo., J. Ross Cheshire, Jr., Nashville, Tenn., for plaintiff.

Wells T. Lovett, Owensboro, Ky., Harold R. Woodard, Indianapolis, Ind., Fine, Hatfield, Sparrenberger & Fine, Evansville, Ind., for defendants.

BROOKS, Chief Judge.

## FINDINGS OF FACT

This case involves the validity and infringement of United States Letters Patent No. 2,648,610, hereinafter referred to as the Martin patent. Plaintiff, assignee of the Martin patent, seeks damages for infringement and an injunction against future infringement by defendant.

The subject in dispute involves popcorn packaged in a popping oil in such a way that both the popcorn and the oil can be poured together from the container.

The Court makes the following findings of fact:

1. Plaintiff, Popcorn-In-Oil, Inc., is a corporation organized and existing under the laws of the District of Columbia with its principal office at the National Press Building, Washington 4, D. C.

2. Defendant, Wyndall's Super Market, Inc., is a corporation organized and existing under the laws of the State of Kentucky and having its regular and established place of business at 1731 Parrish Avenue, Owensboro, Kentucky.

3. Defendant, Hesmer Foods, Inc., which has intervened in this action, is a corporation organized and existing under the laws of the State of Indiana with its principal place of business at 4100 East Vogel Road, Evansville, Indiana. It is the supplier of the accused product to defendant, Wyndall's Super Market.

4. This action arises under the Patent Laws of the United States, Title 35 U.S.C.A. § 281.

5. Jurisdiction and venue are founded on Section 1338(a) and (b), Section 1391(c), and Section 1400(b) of Title 28 U.S.C.A.

6. Defendants have counterclaimed under the declaratory judgment provisions of Section 2201, Title 28 U.S.C.A., seeking damages, a declaration of noninfringement by defendants of the Martin patent. Defendants have also averred that plaintiff is guilty of unclean hands and of laches.

7. The Court has jurisdiction of the parties and of the cause of action presented.

8. The patent in suit contains four claims but plaintiff limits its contention of infringement to Claims 1 and 4, which are as follows:

"1. A food package comprising: a container; a mass of popcorn kernels in said container and substantially filling said container; and popping oil in said container filling the voids between said popcorn kernels, whereby the popcorn kernels and popping oil can be simultaneously poured from the container as a cohesive flowable mass.

"4. A food package comprising: a container; a mass of popcorn kernels in said container substantially filling said container, said popcorn kernels being of substantially uniform size such that they will pass through a $2\%_{4}$ of an inch mesh screen but not through a $1\%_{4}$ inch mesh screen; and popping oil in said container filling the voids between said popcorn kernels and immersing said popcorn kernels therein, whereby the popcorn kernels and popping oil can be simultaneously poured from the container as a cohesive flowable mass."

In the specification portion of the patent, however, it is stated that "the disclosure is not limited to packaging a specific size of popcorn kernel with a predetermined amount of oil, inasmuch as various sizes of kernels can be packed with the requisite amount of popping oil, as desired." (Line 48, column 6)

9. The claims do not call for or require any particular size, type or kind of container.

10. The claims do not specify any particular popping oil, as both say simply "popping oil". In the specification portion of the patent the oil is said to be preferably a mixture of soybean oil and peanut oil. However, the patentee made it clear that "fats or oils other than the oils specifically named may be substituted in carrying out the packaging process." (Line 59, column 6)

11. The claims do not specify any particular range of temperature within which the oil and kernels will simultaneously pour as a cohesive flowable mass. The specification merely calls for the popping oil to be "somewhat viscous even at room temperatures" (Line 39, column 4) without any indication as to what range of temperatures would be included therein or at what time of day or in what part of the country.

12. During the prosecution of the patent application the Patent Examiner (at page 38 of the file history) said, "It is noticed that the final coated product is stated to be a cohesive but flowable mass. It is not clear at what temperature the above flowable condition exists * * *." In reply to this observation of the Examiner it was also pointed out at the interview (page 44 of the file history) that "the melting point of the homogenized soybean oil and refined peanut oil is unimportant and therefore requires no disclosure in the specification."

13. Various oils such as coconut oil, cottonseed oil, peanut oil and soybean oil, along with various fats such as lard were well known as popping oils more than one year prior to the filing date of the Martin patent. The melting points or ranges of each of the various popping oils or fats referred to above, together with their other characteristics such as resistance to rancidity, shelf life and the like, were also well known more than one year prior to the filing date of the Martin patent.

14. Containers enclosing a mass of popcorn kernels with coconut oil filling the voids between the kernels were known and publicly used in this country more than one year prior to the filing date of the Martin patent. The contents of such containers were transferable from the container to a popping vessel with the integrity of the oil-kernel mix being substantially maintained. Such transfer was accomplished by spooning the mix at temperatures below the melting point or range of coconut oil (approximately 76° F.) and was also accomplished by pouring at temperatures above the melting point of the coconut oil.

15. In the Fall of 1949 the Foster Distributing Company of Bellingham, Washington, a firm unconnected with any of the parties in the present suit, developed a product which consisted of a pint glass jar of popcorn kernels immersed in coconut oil. Sales of the product were made as early as November 17, 1949, and continued through 1950. In the Spring of 1951 the popping oil utilized by Foster in its product was changed from 100% coconut oil to a blend of 80% coconut oil and 20% of either peanut oil or cottonseed oil, depending on their availability and relative price.

16. Mr. Robert Key of Bellingham, Washington, while an employee of Foster Distributing Company during 1949 and 1950 used, in his home, the pre-1951 product of Foster, that is, the popcorn-in-coconut-oil product. When Mr. Key so used the product it was stored in the kitchen of his home near the stove and was transferred from the glass container to a popping vessel by pouring.

17. Mr. Foster's and Mr. Key's depositions were taken in 1956 and by stipulation of the parties are to be used as if taken in the instant proceeding.

18. Containers enclosing a mass of popcorn kernels with coconut oil were also publicly known and used prior to May 8, 1951, because of the activities of another disinterested businessman, Mr. Thomas W. Mangelsdorf of Atchison, Kansas. Mr. Mangelsdorf's deposition was taken on August 30, 1956, in con-

nection with a suit on the same patent that is involved in the instant proceeding, said other suit being entitled Rose Kist Popcorn Co., Inc. v. Mazo Brothers, Inc. and Bernard Brager, Civil Action No. 2224–56 in the United States District Court for the District of Columbia. By stipulation of the parties to the instant proceeding the Mangelsdorf deposition has the same standing as if it had been taken in the instant proceeding.

19. At the time his deposition was taken, Mr. Mangelsdorf was President of the F. A. Mangelsdorf Seed Company, Inc., which had a division concerned solely with the selling of popcorn, called Jayhawk Popcorn Company. Prior to May 8, 1951, and more particularly "in the Fall of 1950", the Jayhawk Popcorn Company sold containers enclosing a mass of popcorn kernels with popping oil filling the voids between the kernels. The popping oil used was coconut oil and the mixture of corn and oil was packaged in a tin container bearing a label reading in part "Correctly Blended Proper Amount of Coconut Oil Mixed with Popcorn". In addition, the label said the net contents were "Popcorn 9 oz. Seasoning 3 oz.", the seasoning being shown to be "Coconut Oil". Instructions on the label said:

"Heat Popper

Dip Mixture Into Popper

Any Quantity

Always the Right Proportion

of Popcorn and Seasoning"

20. The tin container of the mixture was identified as Defendant's Exhibit 5 and photographs of it are in evidence in the instant case as Defendants' Exhibit 11.

21. Mr. Mangelsdorf also identified another label that was used by the Jayhawk Popcorn Company. It was identified as Defendant's Exhibit 6 in the Mangelsdorf deposition. This label bears a Copyright notice "© 1950". In addition, it bears in part the wording "The Finest Yellow Hybrid Popcorn Correctly Blended With The Proper Amount of Coconut Oil". Still further the label said

"Ready to Pop 'Quick Pop' Yellow Hybrid Popcorn With Coconut Oil" ...... "Net contents popcorn 9 oz. Coconut Oil 3 oz."

22. Mr. Mangelsdorf first learned of a popcorn-in-oil product in the summer of 1950 through one of his food brokers, a Mr. Perry Grove of Seattle, Washington. Mr. Grove came through Atchison, Kansas, to pay Mr. Mangelsdorf a visit and brought along "a glass jar, containing popcorn and oil which was packaged by Foster Distributing Company at Bellingham".

23. Following Mr. Grove's visit, the Jayhawk Popcorn Company itself started to package and sell a popcorn-in-oil mixture as indicated by the aforementioned photographs and labels. Shipments were shown by invoices (Defendant's Exhibits 7A, 7B, 8A, and 8B) to have been made as early as September 8, 1950, to Gordon Aston of Chicago, Illinois (a sample shipment), and as early as September 11, 1950, to Ruhlman Bros. of Atchison, Kansas (a sale of one case). Sales continued through 1950 and 1951.

24. While the sales of this popcorn-in-oil product by Jayhawk Popcorn Company were not long-lived, the reason, according to Mr. Mangelsdorf, was primarily because their business was a bulk popcorn business in which the organization and promotion techniques were different from and couldn't be used to advantage in selling the popcorn-in-oil product. An additional reason was because the shelf-life of the product was only from four to eight months.

25. Still another disinterested businessman, Mr. Horace A. Norrell of Trussville, Alabama, knew about and sold a popcorn-in-oil product prior to May 8, 1951. More particularly, he sold such a product in 1946 or 1947. His deposition was taken on August 26, 1957, and it has been stipulated by the parties to the instant proceeding that it may be used as if taken in the instant proceeding. Mr. Norrell was a "merchant, groceryman" of some 29 years experience. He said he received a case of

the popcorn-in-oil product "somewhere around '46 or '47. '47, I believe". He described the product as consisting of a glass jar in which the popcorn and oil were clearly visible, with the oil and popcorn level being about the same. He received the shipment from Mr. James Blevins, of Blevins Popcorn Company of Nashville, Tennessee. Mr. Blevins confirmed these statements of Mr. Norrell in his own deposition taken in connection with the instant proceeding on April 12, 1962.

26. Mr. Norrell also stated in his deposition that he had sold "any number" of brands of the popcorn-in-oil product—"We have had a half a dozen different brands with oil in them"—throughout ten years. (His deposition was taken in 1957.)

27. The Norrell deposition was taken in connection with the suit then pending in Thomasville, Georgia, on the same Martin patent as here. That suit, which is *not* the same Thomasville, Georgia, suit in which judgment was rendered, was entitled Rose Kist Popcorn Company, Inc. v. Winn-Dixie, Inc., Civil Action No. 491. The Blevins Popcorn Company defended that suit which was against its customer Winn-Dixie, Inc., and sought through the Norrell deposition to show the patent was invalid because of prior public knowledge, use and sale of the popcorn-in-oil product.

28. Containers having a mixture of popcorn kernels and coconut oil were also commercially sold by Blevins Popcorn Company of Nashville, Tennessee, during 1948. Mr. James V. Blevins sold approximately 50 cases of the product during that year, including the case or cases to Mr. Horace Norrell of Trussville, Alabama.

29. Mr. Blevins had already been in the popcorn business for many years by 1948 and had sold separately packaged popping oils, popcorn for home and commercial use, popcorn bags and the like. Coconut oil was the most popular popping oil he sold, with peanut oil next. Even lard was used and commercially sold by him as a popping oil.

30. Clark Foods, Inc., of Louisville, Kentucky, presently a licensee under the patent in suit and as well one of the three original stockholders in plaintiff corporation, developed in August, 1951, through William R. Clark, Jr., a product consisting of a container enclosing popcorn kernels in cottonseed oil. Before he used cottonseed oil with the popcorn kernels Mr. Clark first tried coconut oil. Not liking the appearance of the popcorn in coconut oil he immediately substituted cottonseed oil. Initial sales of the Clark popcorn-in-cottonseed-oil product were made to customers in September, 1951, and on November 23, 1951, Clark Foods filed a patent application directed to this product in the United States Patent Office.

31. While pending in the Patent Office, the Clark patent application was placed in interference with the application from which the patent in suit matured. Acting under the advice of experienced patent counsel that the claim, or "count", of the interference was invalid because of prior public use, Clark elected not to proceed in the interference, or with his application, and the claim was subsequently awarded to the patent in suit, i. e. to Martin, by default.

32. While all of the known popping oils were available to the manufacturers of these early products, namely to Foster, Mangelsdorf, Clark and Blevins, coconut oil was chosen because, among other reasons, it was relatively cheap and had a longer "shelf-life". The subsequent popularity of other popping oils in popcorn-in-oil products was due, among other things, to the anti-oxidant additives which became available in the early 1950s, and which prolonged the "shelf-life" of all popping oils.

33. The patent office failed to consider all of the pertinent prior art, particularly public knowledge and use of products composed of a mixture of coconut oil and popcorn prior to the date of Martin's invention.

34. The prior adjudication of the Martin patent (Rose Kist Popcorn Co.,

Inc. v. Rose Super Market, Inc., Civil Action No. 401 in the United States District Court for the Middle District of Georgia) was apparently made without the benefit of evidence of prior knowledge and public use and sale of products composed of a container enclosing a mixture of popcorn kernels and coconut oil. The sole attack made on the patent in that suit was based on the patents and publications that were cited by the Examiner during the prosecution of the Martin patent.

35. The interference proceeding in the patent office, involving the application from which the Martin patent matured, was terminated at a preliminary stage of the interference by failure of the opposing party to file a Preliminary Statement, and the claim involved in the interference was therefore awarded to Martin without a full trial of the issue raised in the interference proceeding.

## CONCLUSIONS OF LAW

The requisites for the validity of a patent are novelty, utility and invention. Maytag Company v. Murray Corporation of America, 318 F.2d 79 (6th Cir. 1963); Aluminum Company of America v. Sperry Products, Inc., 285 F.2d 911 (6th Cir. 1960), cert. denied, 368 U.S. 890, 82 S.Ct. 142, 7 L.Ed.2d 87 (1961); Allied Wheel Products v. Rude, 206 F.2d 752 (6th Cir. 1953).

In order to constitute a patentable invention a combination of old parts or elements must perform or produce a new and different function or operation than that theretofore performed or produced by them, and it is not sufficient that the combination be superior to what went before in producing a more convenient and more economical mechanism. Maytag Company v. Murray Corporation of America, supra; Bede v. Baker & English, Inc., 274 F.2d 833 (6th Cir. 1960); General Motors Corp v. Estate Stove Co., 203 F.2d 912 (6th Cir. 1953). The test of invention is whether the old elements are used in a manner different from the previously known use in such

a way that the alleged invention would not have been obvious to one skilled in the art. Maytag Co. v. Murray Corp. of America, supra; Aluminum Co. of America v. Sperry Products, Inc., supra.

While commercial success is a factor to be considered in a close case of patentability, no amount of commercial success will validate a patent if invention is lacking. Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Aluminum Co. of America v. Sperry Products, Inc., supra; L. M. Leathers' Sons v. Goldman, 252 F.2d 188 (6th Cir. 1958).

The presumption of validity of a patent is weakened if there is applicable prior art not considered by the patent office. Aluminum Co. of America v. Sperry Products, Inc., supra; Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp., supra; Jungersen v. Ostby & Barton Co., 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235 (1949); Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721 (1944).

Inasmuch as petitioner has sought and obtained a broad construction of his claims, he cannot now narrow that construction so as to avoid anticipation by showing that the claimed method was used in a particular form of structure not claimed. Smith v. Hall, 301 U.S. 216, 232, 57 S.Ct. 711, 81 L.Ed. 1049 (1937). Similarly, petitioner, having stated that his invention covered any popping oil, cannot now state that some popping oils are not covered.

The Martin patent is therefore invalid for failure to define invention over prior art and knowledge. 35 U.S. C.A. §§ 102 and 103. Having found the patent to be invalid, the Court is not required to rule on the question of infringement. Thabet Mfg. Co. v. Kool Vent Metal Awning Corp., 226 F.2d 207, 211 (6th Cir. 1955).

The defendant, Wyndall's Super Market, Inc., and the intervener defendant, Hesmer Foods, Inc., will tender appropriate judgments.