**Axel C. WICKMAN and Wickman, Ltd.,
Defendants-Appellants,**

**v.**

**VINCO CORPORATION and Joseph J.
Osplack, Plaintiffs-Appellees.**

**No. 14168.**

United States Court of Appeals
Sixth Circuit.
March 22, 1961.

Joseph K. Schofield, West Hartford, Conn., Allen & Allen, by Stanley H. Foster, Cincinnati, Ohio, on brief, for appellants.

W. B. Morton, Jr., New York City, Berrien C. Eaton, Jr., Miller, Canfield, Paddock & Stone, Detroit, Mich., and Pennie, Edmonds, Morton, Barrows & Taylor, New York City, on brief, for appellees.

Before MARTIN, CECIL and O'SULLIVAN, Circuit Judges.

MARTIN, Circuit Judge.

This appeal evolves from a dispute concerning the invention of and patent proceedings relating to a certain type of gear-grinding machine.

Appellant Axel Wickman, while in England in 1938, conceived an invention which he then thought to be new. The invention related to the subject matter of grinding gears in a specific manner with a grinding wheel characterized by having its periphery formed with a helix. On October 20, 1938, Wickman filed in the Patent Office of Great Britain a provisional application designated as No. 30,323/38. As part of the same application, he filed a complete specification on October 9, 1939. United States application, No. 302,251, was filed by Wickman on October 31, 1939, and by making therein specific claims to the prior British application, he claimed the benefit of the priority thereof under the terms of the then existing United States Statute.

However, Wickman abandoned both applications. The British application was abandoned on January 10, 1940; and the United States application on July 10 of that year.

The appellee, Joseph J. Osplack, had conceived the same invention in the United States and had produced a pencil layout of the complete machine by January 11, 1945. This layout embodies the invention in suit.

On March 30, 1945, Wickman filed a provisional specification under British application No. 8,116/45, which disclosed and claimed the invention in suit. He filed a complete specification in the British application on March 5, 1946. Then, on March 11, 1946, he filed United States application No. 654,259, corresponding to the complete specification of the above-mentioned British application. The application, No. 654,259, disclosed and claimed the invention involved here and matured into United States Patent No. 2,449,354, which is the subject of the present controversy.

Wickman's United States application No. 654,259, was disclosed to the appellee, Osplack, by Motor Tool Manufacturing Company on July 17, 1946; and on August 15, 1946, Osplack and the Vinco Corporation rejected Motor Tool's offer to sell rights based upon Wickman's application, No. 654,259, and disclaimed any interest in the now disputed invention. The appellees did not reveal the fact that Osplack had conceived the same invention on or about January 11, 1945; and that he intended to claim his reduction of the invention to practice before July 17, 1946—the date on which Wickman's application had been disclosed to appellee, Osplack.

On March 5, 1947, Osplack filed United States application No. 732,521 which, it is stipulated, *discloses* the invention in suit; but appellant, Wickman, denies that the application *claims* the invention.

British Patent No. 591,916, based on Wickman's British application, No. 8,-116/46, was published on October 27, 1947; and, on September 14, 1948, American Patent No. 2,449,354 (the patent controverted here) was issued to Wickman, based on application No. 654,259 which had been filed on March 11, 1946.

On November 9, 1948, Osplack filed United States application No. 59,166. It is agreed that this application *disclosed* the invention in suit; but there is disagreement as to whether the application also *claimed* the invention. The application was amended by appellee, Osplack, on November 28, 1949, to copy the claim of Wickman's United States Patent, No. 2,449,354, in an attempt to create an interference. Such interference was declared on January 26, 1950.

The interference was decided by the Board of Interference Examiners in

favor of Wickman. Their decision in May of 1951 was reconsidered and affirmed by the Board in August of that year. Information relative to the 1938, 1939 and 1940 British applications by Wickman was not before the Interference Examiners. In order that new testimony could be taken, appellees elected to proceed by way of a civil action under section 146, Title 35, U.S.C.A. (1952), rather than by an appeal (under section 141 of Title 35) to the Court of Customs and Patent Appeals upon the record made in the Patent Office alone.

It is the claim of the appellee, Osplack, that Wickman's 1938 British application, No. 30,323/38, as supplemented by the complete specification of 1939 upon which United States application No. 302,251 was based, disclosed and claimed the invention in suit in such manner that the invention would have been obvious to a person skilled in the art. The appellant, Wickman, contends that the applications were for two different inventions. The United States District Court decided this fact issue in favor of Osplack.

An interesting question presented is whether an inventor's right of priority under the International Treaty is considered to be dated from an abandoned application, or from a subsequent application filed in a foreign country. Here, the application was filed in England and later abandoned. This question of law must be determined according to the findings of fact. If it is found that Wickman's British applications of

1939 and 1945 were for different inventions, the question as to which filing gives priority becomes moot, inasmuch as the same invention would not be involved and each proper filing, if seasonably exercised, would give rise to a different priority.

■■ The district court found that the Wickman application of 1938, as supplemented by the complete specification in 1939 upon which United States application No. 302,251 was based, disclosed and claimed the invention with which we are concerned in such manner that the invention would have been obvious to a person skilled in the art. In so holding, the United States District Judge placed great reliance upon the testimony of Leonard J. Smith, a professional engineer of ten years' experience in the gear-grinding field. Determination of the question is an issue of fact; and this court will not disturb the finding of the district judge unless it be shown that such finding was clearly erroneous and not based on substantial evidence. The finding here was not clearly erroneous. The testimony of the witness, engineer Smith, constitutes substantial evidence upon which the trial judge could properly base his opinion.

Appellants contend that under applicable sections of the International Treaty (International Convention for the Protection of Industrial Property, Article 4A, secs. 1 and 2; 4C, secs. 1 and 2;[1] implemented by the then-existing United States Statute, R.S. 4887, 35 U.S.C. § 32,[2] later replaced by section 119, Title

---

1. Article 4A. "(1) Any person who has duly applied for a patent the registration of a utility model, industrial design or model, or trade mark in one of the countries of the Union, or his legal representative or assignee, shall enjoy for the purposes of registration in other countries, a right of priority during the periods hereinafter stated.

"(2) Any filing having the value of a formal national filing by virtue of the internal law of each country of the Union or of International treaties concluded among several countries of the Union shall be recognized as giving rise to a right of priority."

"4C. (1) The above-mentioned periods of priority shall be 12 months for patents and utility models and 6 months for industrial designs and models and for trade marks.

"(2) These periods shall start from the date of filing of the first application; the day of filing is not counted in this period."

2. Title 35, sec. 32, U.S.C.A. " * * * An application for patent for an invention or discovery or for a design filed in this country by any person who has previously regularly filed an application for a patent for the same invention, discovery,

35) and the law of England, the abandoned 1938 application was a nullity and could have no effect on Wickman's right of priority. Appellees counter that Article 4C(2) of the Treaty provides that "these periods shall start from the date of filing of the first application"; that the language is explicit and means just what it says; and that, when Wickman failed to pursue to maturity his application for an American patent within twelve months after the 1939 filing he lost all right to priority in this country.

 In arguing that the "first" filing by Wickman in England and the subsequent application in the United States are nullities, the appellant insists that the law of England should control. The district court considered the rights of the parties to be dependent upon the provisions of the Treaty, as implemented by the laws of the United States. This position appears to be sound. It is true that we are here concerned with the provisions of the International Treaty. But the primary issue is the determination of rights of the parties under United States patent law, even though the possible right of one of the parties to a patent stems from an application filed in Great Britain.

It is logical that the court should look to the patent laws of the United States to determine issues concerning the award of a United States patent. While the original right is derived from the Treaty, we must look to the laws of the United States for the means of implementing that right. The British cases cited by the appellant are, therefore, not controlling. The purpose of the Treaty and of section 32, Title 35 U.S.C.A. (supplanted by section 119), seemingly is to give the same effect to a foreign application, if it meets the necessary requirements, as if it had been filed in the United States on the date upon which it was filed in the foreign country. There is nothing in the Treaty, nor in the statute, purporting to give to foreign filings advantage over domestic filings. The foreign application is merely placed on equal footing with the United States application.

The treatment given an abandoned patent application under United States law must be determinative of the effect of the abandoned applications in the instant case. Appellees have cited several cases as authoritative upon the question of the effect to be given an application which is later abandoned. Kling v. Haring, 56 App.D.C. 153, 11 F.2d 202, certiorari denied 271 U.S. 671, 46 S.Ct. 485, 70 L.Ed. 1143; Midwest Manufacturing Company, Inc. v. Staynew Filter Corporation, D.C.W.D.N.Y., 11 F.Supp. 705.

In Kling v. Haring, supra, is evinced the treatment afforded an application as concerns priority. There, Haring filed an application in Germany on the 11th of September, 1914: Kling filed his application in the United States on December 11, 1915. Haring was granted a patent dated October 6, 1916, and made effective as of September 11, 1914. Kling was granted a United States patent on February 13, 1917.

On August 26, 1921, Haring filed in the United States Patent Office an application to patent the subject matter of his German patent. The result of his filing was the declaration of an interference between his application and the patent granted to Kling. Haring failed to pay the fourth-year fee on his patent which, under German law, caused him to lose his rights, privileges, and advantages granted thereby. The United States

---

or design in a foreign country which, by treaty, convention, or law, affords similar privileges to citizens of the United States shall have the same force and effect as the same application would have if filed in this country on the date on which the application for patent for the same invention, discovery, or design was first filed in such foreign country: *Provided*, That the application in this country is filed within twelve months in cases within the provisions of section 31 of this title, and within six months in cases of designs, from the earliest date on which any such foreign application was filed. * * *"

Court stated that this loss under German law did not mean that he had lost all rights, privileges and advantages granted by the patent laws of this country. In affirming the result of the interference proceeding in favor of the priority of Haring, the court stated (11 F.2d 204): "Haring's filing of his application in Germany on the 11th of September, 1914, was a constructive reduction to practice, and prima facie established priority of invention over Kling, inasmuch as Kling did not file his application in the United States until the 11th of December, 1915. Haring's rights under the Nolan Act, and under 4886 and 4887 of the Revised Statutes, as amended (Comp.St. Secs. 9430, 9431), was not dependent on the outcome of his German application. The granting, denial, lapsing, or abandonment of that application could not and did not affect his constructive reduction to practice on the 11th of September, 1914, or the resulting prima facie priority of invention thereby established. \* \* \*"

The Kling case, supra, seems to hold clearly that where there is a foreign application upon which priority in the United States is based, such application is under United States patent law a constructive reduction to practice; and it establishes priority of invention, irrespective of whether or not the foreign application is subsequently granted, denied, abandoned, or allowed to lapse. The case involved a situation where the foreign application resulted in the granting of a patent which was altered by subsequent events. Even so, the assertions in that case seem to be applicable to the case here, inasmuch as the Kling case held that the *granting* or the *denial* of a foreign application—as well as its abandonment or lapse—would have no effect on the *application's* resulting in a constructive reduction to practice and establishment of priority. It appears, therefore, that in the Kling case the court was speaking of the effect of the application itself: not just an application that resulted in the award of letters patent. The application, *per se,*

creates priority and is treated as a constructive reduction to practice.

Midwest Manufacturing Company, Inc. v. Staynew Filter Corporation, 11 F. Supp. 705, 707 follows the principle stated in the Kling case. In considering the plaintiff's motion for letters rogatory and the defendant's motions to strike portions of the complaint and for a bill of particulars, the court weighed the question of the priority of a foreign application. In so doing, it was stated that the filing of applications in Germany was a constructive reduction to practice and established *prima facie* priority of invention. The court also asserted that it is "not material what happened to the German applications subsequent to the filing thereof." Kling v. Haring, 11 F.2d 202, was cited. The United States District Judge observed that "it is immaterial what became of those applications after the filing date, and plaintiff should not be required to furnish particulars as to what did occur in the matter of the prosecution of the applications subsequent to the dates of filing."

We are of opinion that the Kling case and the Midwest case plainly state the United States law regarding the effect of a filing in a foreign country upon the determination of priority of invention. More specifically, these cases set forth that the filing itself gives priority and amounts to constructive reduction to practice; and that later action on the application is not material.

■ Thus, in the case at bar, the fact that the earliest applications of Wickman were abandoned and did not result in issuance of letters patent would not alter the fact that, under United States patent law, they are considered the "first" applications. Inasmuch as the applications of Wickman with which we are here concerned were for the same invention, his right of priority would flow from such early filings. Although he filed a timely application in this country after his early filings in Britain, he permitted its abandonment on July

10, 1940. Under such circumstances, he would stand in the position of one having no United States application filed within the statutory period of twelve months after the controlling British filing.

█ We consider that the trial court was correct, therefore, in finding that the defendants-appellants' patent, No. 2,449,354, was void for lack of priority over the filing of Osplack under date of November 9, 1948.

The United States District Court determined also that Osplack had been guilty of laches and, consequently, he was not entitled to letters patent on the gear-grinding machine. No appeal has been taken by Osplack from the decision, so it is not necessary that this court review that phase of the case.

For the reasons stated herein, in addition to those stated by the district judge in his opinion, the decision of the United States District Court is affirmed.