**MAYTAG COMPANY, Plaintiff,**

v.

**MURRAY CORPORATION OF AMER-ICA, Defendant.**

**No. 16781.**

United States District Court
E. D. Michigan, S. D.
March 28, 1961.

Clarence B. Zewadski, Whittemore, Hulbert & Belknap, Detroit, Mich., for plaintiff.

Patrick H. Hume, Frank F. Reed, Byron, Hume, Groen & Clement, Chicago, Ill., for plaintiff.

Arthur W. Dickey, Robert L. Boynton, Harness, Dickey & Pierce, Detroit, Mich., for defendant.

FREEMAN, District Judge.

### Facts

This is an action for infringement of Letters Patent No. 2,717,456 issued to Thomas R. Smith on September 13, 1955, and presently owned by the plaintiff, Maytag Company. In its answer the defendant, Murray Corporation of America, denies infringement and alleges that the patent is invalid for lack of novelty and invention.

The patent in issue is a combination patent relating to a clothes drier of the type generally utilized as a home appliance. The art of clothes driers is crowded and many different methods of drying wet clothes and fabrics are employed. A basic distinction exists in the art, however, between those driers employing the "open" system and those operating as a "closed" system.

In the open type drier, air is constantly being pulled from outside the drier and introduced into the drier. Having been heated, the airstream is brought in contact with the wet clothes so as to cause an evaporation of the moisture contained in the clothes. The moist air, together with the resulting fine lint particles, is

then expelled from the drier and, via pipes and ducts, is blown into the outside atmosphere.

The closed type drier, on the other hand, does not rely on the air throughput method of the open system, but rather is substantially self-contained, utilizing only the air in the machine for drying purposes. In this type drier, the air is heated, brought in contact with the wet clothes, and thereafter exposed to a condenser, which usually consists of a film or spray of relatively cold water and which removes the moisture from the heated air. The relatively dry air then begins a new cycle of heating, evaporation and condensation.

It is evident from the above that substantially different problems exist in these two types of driers. Thus, in the open drier, for example, usually no condenser is employed and much of the lint developed in the drying operation is blown out of the drier with the moist air. In the closed drier, on the other hand, an efficiently operating condenser must be present and some provision for the removal of lint must be made.

The patent in issue discloses a structure of the "closed" type drier. In the introductory part of the specification, the inventor directs himself to some of the problems left unsolved by the prior art:

"Still other driers have been proposed which incorporate a heating element in the drying chamber for evaporating the moisture in the clothing and in which the vapor leaving the drying chamber is condensed by means of a water spray or other cool surfaces. While a construction of this type is fairly successful with respect to preventing the discharge of heated moisture laden air into the ambient air, the lint problem, although not initially apparent to the operator, is an important factor because it tends to collect on the internal walls of the drying chamber. This is a serious disadvantage for several reasons:

One, eventually a portion of the accumulated lint will contact the heating element with the resultant danger of an internal fire spreading throughout the drier; and, two, if the lint is kept moist to avoid the first hazards, bacterial action will take place sooner or later which will result in objectionable odors and unsanitary drying conditions." (C. 1, ls. 23–39).

The specification then goes on to state seven express objects of the invention, of which the following object is typical:

"It is another object of the invention to provide a tumbler type clothes drier with an improved moisture condensing and lint dispensing means which is simple in construction and requires a minimum number of moving parts." (C. 2, ls. 8–11).

In accordance with these objects of the invention, the patent provides for a substantially imperforate container having relatively smooth interior walls completely surrounding a rotatable clothes receiving tumbler type drum; a condenser consisting of a water film flowing down over a portion of one such wall; and heating means to heat another portion of the wall which, in turn, heats the clothing in the tumbler to evaporate the moisture therein.

Accordingly, claim 9, which is fairly representative of all the claims in issue, provides:

"A drier for damp clothing, comprising a substantially imperforate casing defining a chamber and having an access opening therein, a closure for said opening, a tumbler in said chamber for agitating the clothing, said casing comprising walls openly facing said tumbler, means for heating said chamber to evaporate the moisture in the clothing, means for conducting cooling water in a relatively thin and wide film over the interior of a portion of said walls to condense the evaporated vapor, and means for directing the

cooling water and condensate to drain."

The crucial elements of the combination disclosed by the patent therefore are:

(1) A substantially imperforate casing defining a chamber;

(2) A tumbler or drum to agitate the clothing;

(3) Walls of such casing which openly face the tumbler or drum;

(4) Means for heating the chamber;

(5) A water film condenser.

Defendant's machines are combination washer-driers having chamber walls openly facing the drum and a water film condenser substantially identical to that shown in plaintiff's patent. The heating elements are located in a channel duct on the outside of the main chamber. The two ends of the duct connect to the chamber so that heated air can enter the chamber on one end and can be drawn into the heater-duct on the other hand.

It is the contention of the plaintiff that defendant's machines infringe on nine claims of plaintiff's patent and that such patent is entitled to protection because it is valid in that it satisfies all the statutory requirements of novelty, utility and invention.

Defendant denies plaintiff's allegations and contends that it cannot be made liable to plaintiff in this action because defendant's machines in structure and operation are substantially identical with machines in the art prior to plaintiff's patent.

From the respective contentions of the parties, it is apparent that the general issues in this action are those usually framed in patent cases, i. e., the issues of validity and infringement.

## Validity

Pursuant to 35 U.S.C.A. § 282, the defense of invalidity may be established by a showing that the patent in suit lacks novelty or invention, or both. § 282 further provides for a presumption of validity and requires notice of patents relied on as showing anticipation:

"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it.

\* \* \* \* \* \*

"In actions involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party \* \* \* of any patent \* \* \* to be relied upon as anticipation of the patent in suit \* \* \*."

Defendant in this case gave notice and did rely on the following three patents as anticipations with respect to the patent in suit:

| | |
|---|---|
| Tiemann | No. 1,019,743 |
| Schneible | No. 1,442,179 |
| Bradley | No. 2,496,517 |

The following 12 patents were set up by defendant to show the state of the art generally:

| | |
|---|---|
| Edwards | No. 968,456 |
| Murray, et al. | No. 1,132,677 |
| Deem | No. 2,394,293 |
| Constantine | No. 2,590,295 |
| Erickson, et al. | No. 2,701,421 |
| Pugh | No. 2,451,692 |
| Pugh | No. 2,453,859 |
| O'Neil | No. 2,589,284 |
| O'Neil | No. 2,608,769 |
| O'Neil | No. 2,675,628 |
| Hammell, et al. | No. 2,644,245 |
| Graham | No. 2,686,372 |

In addition, defendant relied on the following three patents issued to the patentee of the patent in suit to show that the patentee recognized certain difficulties in the machine of plaintiff's patent:

| | |
|---|---|
| Smith | No. 2,680,915 |
| Smith | No. 2,680,916 |
| Smith | No. 2,833,056 |

The statutory test of invention is set forth in 35 U.S.C.A. § 103:

"A patent may not be obtained though the invention is not identically disclosed or described as set

forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

The first question before the court, therefore, is whether the invention in issue here would have been obvious to one skilled in the art in view of the prior art in existence as of the date of the alleged invention.

The parties agree that the patent in issue is a combination patent in which all elements are old. Plaintiff contends, however, that the particular combination of elements in its patent brought about new and surprising results.

■ The law with respect to patents disclosing a combination of old elements was only recently stated by the Court of Appeals for this Circuit in Bede v. Baker & English, Inc., 1960, 274 F.2d 833, at page 839, wherein the court said, citing from General Motors Corp. v. Estate Stove Co., 6 Cir., 1953, 203 F.2d 912:

"The combination of old parts or elements, in order to constitute a patentable invention, must perform or produce a new and different function or operation than that theretofore performed or produced by them; it is not sufficient that the combination be superior to what went before in producing a more convenient and more economical mechanism."

In applying this rule to the facts in the present case, the court is of the opinion that of all the prior art patents relied upon by the defendant, the Bradley patent is clearly the most pertinent. Apparently the same conclusion was also reached by counsel for both parties since they conducted demonstrations of the Bradley machine during the trial of this case and directed the bulk of their arguments to the Bradley patent.

■ Before discussing the Bradley patent, it must be noted that Bradley was not made a reference during the prosecution of the patent in issue. The statutory presumption of validity attaching to the patent in issue is therefore greatly weakened. Aluminum Company of America v. Sperry Products, Inc., 6 Cir., 1960, 285 F.2d 911. Stated more precisely, *no* presumption of validity can attach to the patent in issue, *as against Bradley*.

The Bradley patent was issued on February 7, 1950, pursuant to an application filed on June 4, 1948. The record shows that at that time, the patentee, Bradley, was an electric appliance repairman employed by the Central Maine Power Company in Maine and that the invention was the result of his experimentation with a standard Bendix washing machine, rewired in such a manner as to cause the drum to rotate continuously while the machine was in operation and so as to eliminate the washing cycles, which the machine was capable of performing.

Although a patent was secured by Bradley, and even though several attempts were made to interest established companies of the home appliance field in Bradley's invention, the machine did not operate satisfactorily and was never commercially manufactured and sold.

The Bradley patent has only one claim. This claim deals with a portable drying apparatus which is not pertinent to the patent at issue. The drawings and specification, however, also disclose a machine very similar to plaintiff's patent. Fig. 1 of Bradley's patent shows a machine consisting of an outer shell with an inner cylindrical chamber on a horizontal axis. Inside this chamber a perforated tumbler type drum is shown connected by belt and pulleys to a motor at the bottom of the machine. The drawing further shows a door at the front of the machine giving access to the inside of the tumbler, a soap door opening into the chamber on the top of the machine and a perforat-

ed tube extending horizontally from the back and the outside of the machine into the space between the tumbler and the inside wall of the chamber.

In pertinent part, the specification provides as follows:

"Another object of the invention is the provision of an apparatus of the character set forth, of novel means for converting steam and water vapor into water." (C. 1, ls. 14–17).

"If steam or water vapor is produced by the action above described, cold water may be played along the inner sides of the chamber to thereby condense the same whereby it may not escape into the room in which the apparatus is located." (C. 3, ls. 39–44).

The demonstrations of the two machines built in accordance with the Bradley patent and the testimony adduced at the trial show that the machine disclosed by the patent operates as follows:

A heater blows hot air into the chamber of the machine through an opening at the bottom of the chamber. This air evaporates the moisture contained in the wet clothes being tumbled in the rotating drum and seeks an outlet to the ambient atmosphere, either through the soap door or through a water drain at the bottom of the chamber. Some of the air comes in contact with a water film condenser located on one of the inside walls of the chamber. Measurements made at the time of both demonstrations indicate that the water film condensed approximately 20% of the moisture evaporated from the wet clothes, while 80% presumably escaped into the room.

Plaintiff contends that the Smith patent shows invention over Bradley in that it would not have been obvious to one skilled in the art to construct plaintiff's machine from the disclosures in the Bradley patent. Specifically, plaintiff urges that Bradley shows essentially an "open" or "through-put" system, in which the air-flow is directional, as against the "closed" machine of plain-

tiff, in which the air flows largely at random, resulting in the preservation of energy and a substantial degree of efficiency. In other words, the principal argument of plaintiff seems to be that in Smith's invention, the moisture evaporated from the wet clothes moves to the condenser because of the vapor pressure difference caused by the temperature differential between the relatively cool air immediately adjacent to the condenser and the relatively warm air surrounding the clothes, while in Bradley, as in all the other prior art patents, an artificial or other directional force is supplied and relied upon to achieve the required movement of the moisture-laden air from the clothes to the condenser. Plaintiff recognizes that principles of hydro-and thermodynamics cannot be patented, but insists that the novel reliance upon such laws in its machine brings about the patentable new and surprising result of a simple and efficient "closed" drier.

Defendant contends that Bradley discloses all the elements of plaintiff's patent; that it would have been obvious to one skilled in the art to take the step from Bradley to plaintiff's structure; that plaintiff's purported invention was directed primarily to solving the "lint problem" existing in the prior art; and that the attempted distinction between Bradley and plaintiff's patent is artificial and without merit.

From these contentions it appears that the following basic issues are before the court:

(1) Does plaintiff's patent disclose the alleged invention contended for by plaintiff?

(2) If so, would the subject matter patented by plaintiff have been obvious to one skilled in the art in view of the existing prior art and, particularly, Bradley?

It is true that the specification of plaintiff's patent shows much concern with the "lint problem". As was already pointed out, this problem existed in the prior art because of difficulties encountered in providing for the efficient remov-

al of lint. Thus, in "closed" driers which incorporated a heating element and a water condenser in the drying chamber, lint would tend to collect on the walls of the chamber and on the ducts, pipes and baffles which were used in order to channel the moist air from the clothes to the condenser. This collection of lint, according to the specification in plaintiff's patent, constituted a serious problem because of the fire hazard and the objectionable odors and unsanitary conditions.

Plaintiff's patent proposed to overcome these difficulties. In addition, however, a fair reading of the specification discloses that the patentee also proposed to eliminate all fans, ducts, channels and flanges formerly utilized to direct the flow of air and, instead, proposed to rely on the rotation of the drum and the vapor-pressure difference already referred to in order to achieve the desired movement of moisture from the clothes to the condenser. To this end the following relevant statements appear in the specification of plaintiff's patent:

"Another portion or section of the container is directly cooled by means of a stream of cool water flowing over the interior surface of that section. Since this area is kept cool and moist by a constant flow of cooling water, the vapor emanating from the tumbling clothing flows toward the coolest portion of the container, * * *." (C. 1, ls. 46–51).

"Since the heating and cooling surfaces are both smooth and the direction of flow of vapor and lint will always be in the direction of the coolest surface, the tendency for the lint to collect on and tenaciously adhere to the dry, warmer and hotter surfaces is for all practical purposes eliminated." (C. 1, ls. 62–67).

"With the drum 11 rotating in a counterclockwise direction as viewed in Figure 1, the vapor is circulated around the inner periphery of the container and in doing so a portion of the vapor contacts the cool wet sector or zone 47 of the container and is condensed. This condensation of the vapor develops a slightly reduced pressure at this zone and results in a flow of vapor in the direction of the cool surface whereat it is condensed." (C. 5, ls. 1–9).

"From the foregoing, it can be seen that a relatively simple drier construction has been provided which has no lint trap, does not require the circulation of ambient air therethrough and wherein both the heating and cooling or condensing operations are confined to definite areas in a single chamber which also houses the rotatable drum for agitating the fabrics." (C. 5, ls. 39–45).

See, also: C. 2, ls. 8–11; C. 2, ls. 33–35; and C. 4, ls. 40–45.

In view of the above language, this court is of the opinion that the specification of plaintiff's patent discloses the invention contended for by the plaintiff in the present case.

The second and more difficult question is whether plaintiff's combination, in view of its operation described in the specification, amounts to an invention, i. e., whether it satisfies the statutory test of nonobviousness or, to put it another way, whether [274 F.2d 839] "the combination of old parts or elements" performs or produces "a new and different function or operation than that theretofore performed or produced by them". Bede v. Baker & English, Inc., supra.

From the descriptions of the structure and operation of the machines disclosed by the patent to Bradley and by plaintiff's patent, it appears that only three differences exist between these patents:

(1) Bradley's heater is outside the drying chamber while plaintiff's heater is in such chamber.

(2) Plaintiff's drying chamber is substantially imperforate, while Bradley's is not.

(3) Bradley supplies a force (through the propeller-fan in

the heater) by which air is propelled into the chamber, while plaintiff does not supply any directional force to move the air inside the chamber, but expressly relies on the vapor pressure differential and the rotation of the drum to achieve the desired condensation of moisture.

The first two distinctions above, by themselves, clearly would not substantiate a claim of invention, since many prior art patents, other than Bradley, disclose a heater *inside* a "substantially inperforate" drying chamber. Any invention must, therefore, be based on the third distinction above, i. e., it must lie in the results obtained from the presence of a "substantially imperforate" drying chamber, coupled with the absence of any artificial force designed to cause or, as a matter of fact, causing the air inside the chamber to move in a sequential pattern, bringing about evaporation and condensation of the moisture contained in the clothes.

With respect to this last and ultimate question raised, it is immaterial that some air movement in the chamber may be brought about by the rotation of the drum. The same air movement must take place in all prior art driers having a rotating drum. At any rate, this is not what plaintiff relies on in support of its claim of invention.

The prior art referred to in the present case very clearly discloses that it was consistently thought necessary in driers of the "closed" type to provide some means for causing a "sequential" flow of the air inside the chamber either by providing a fan and appropriate ducts and channels to cause the air to flow over the condenser, or by arranging the heater and condenser in such a manner as to create a convection air flow pattern which, with the help of walls and baffles, would tend to channel the moist air over the condenser. As has already been pointed out, the ducts, channels, walls and baffles thought necessary in a drier of that kind brought about a substantial lint problem.

Through the arrangement shown in plaintiff's patent, a great improvement was made possible with respect to the lint problem. In addition, plaintiff's patent disclosed an efficient drier of a relatively simple construction in which the drying operation is achieved without any planned movement of the air, but simply as a result of the existing vapor pressure differential in the drying chamber.

Neither Bradley nor any other relevant prior art patent discloses or even refers to such a method of operation. On the contrary, the essence of Bradley's invention is in the portable heater which blows heated air from the outside into the drying chamber and by necessity causes movement of air from the clothes to the condenser.

In plaintiff's patent a new and surprisingly simple method of operation is disclosed for the first time. Although all the structural elements are old, in the peculiar combination disclosed by the patent they cooperate in a new and different manner, bringing about a surprising result which the prior art inventors were unable to conceive or anticipate.

■ The above considerations, which are based on the prior art submitted and the voluminous evidence adduced during the trial, convince this court that invention is present and that the differences between the machine disclosed by plaintiff's patent and the prior art are such that plaintiff's machine would *not* have been obvious at the time the invention was made to a person having ordinary skill in the drier art.

With respect to anticipation, the court is of the opinion that even if invention were lacking in plaintiff's patent, neither Bradley, nor Tiemann or Schneible, would satisfy the test for anticipation which only recently was again stated by the Court of Appeals for this Circuit in Aluminum Company of America et al. v. Sperry Products, Inc. et al., 285 F.2d 911, at page 917.

### Infringement

Plaintiff alleges that defendant has infringed plaintiff's patent by making, sell-

ing and using devices embodying the patented invention. Specifically, plaintiff alleges that defendant's commercial clothes drier models CDF, CDH and CDK infringe claims 2, 3, 7, 8, 9, 12, 15, 16 and 17 of plaintiff's patent.

Since it is not disputed that defendant has, as a matter of fact, made, sold and used the above enumerated models, the only question before the court is whether such models infringe any or all of the claims of plaintiff's patent alleged to be infringed. In discussing this question, the court will refer to the three alleged infringing models as "defendant's machine", since the parties agree that all three models are essentially the same in all particulars material to this suit.

It is plaintiff's contention that defendant's machine comes within the plain scope of the 9 claims alleged to be infringed and that infringement is therefore established.

Defendant's principal argument, on the other hand, is that its machine is substantially identical to those disclosed by the prior art, particularly Bradley, and that defendant, therefore, cannot be charged with infringing plaintiff's invention.

Both parties have cited a great number of cases in support of their respective positions. It is clear that both approaches, i. e., an analysis of the relationship between defendant's machine and the claims of plaintiff's patent, or a comparison of defendant's machine with the prior art, will lead to the identical conclusion if that conclusion be one of non-infringement. The second approach alone, however, can never lead to a conclusion of infringement while the first approach will lead to either conclusion. In the present case, no unusual facts have been called to the attention of this court which would make the second approach preferable over the first. In analyzing the issue of infringement, the court will, therefore, use the approach suggested by plaintiff and is thus faced with the general issue of whether or not defendant's machine has every element or its equivalent of any claim of plaintiff's patent so combined as to produce substantially the same result operating in substantially the same way.

It has already been pointed out that defendant's machine, when operated as a clothes drier, is very similar to the machine disclosed in plaintiff's patent. The only significant structural difference between these two machines relates to the location of the heater. Although expressly not limited to that arrangement, plaintiff's patent shows heating elements embedded in part of a wall of the drying chamber, while in defendant's machine, the heating elements are in a bypass tube or channel entirely separate from the drying chamber. When in operation, the air in the drying chamber in plaintiff's machine is heated by radiation from the heating elements and with the help of whatever air movement may exist because of the rotation of the drum. In defendant's machine, air is constantly being drawn from the drying chamber into the heater bypass tube. The air stream is led over the heating elements and the heated air is then blown into the drying chamber generally in a direction toward the tumbling clothes. This circulation of air takes place at a velocity of approximately 30 miles per hour, resulting in an exchange of air at the rate of approximately 40 times per minute.

As was already pointed out, all but one of the claims in issue recite the following elements:

(1) A substantially imperforate casing defining a chamber;

(2) A tumbler;

(3) Walls of such casing which openly face the tumbler;

(4) Means for heating the chamber;

(5) A water film condenser.

It is very clear that defendant's machine has a tumbler in open confronting relation to a water film condenser (elements 2, 3 and 5 above).

While all nine claims recite "means for heating" or "heating means", this ele-

ment is limited in claims 2 and 3 by the requirement of

"means for heating said chamber *through a portion of said wall*". (Emphasis supplied.)

In view of the description contained in the specification of plaintiff's patent, this court is of the opinion that this limitation was intended to mean what it says, i. e., it requires heating to take place through a *portion of* and not through a *hole* or *opening in* the wall. Since the heated air in defendant's machine is supplied through an *opening in* the wall of the chamber, this court finds that defendant's machine does not infringe claims 2 and 3 of plaintiff's patent. Defendant's machine does have the "heating means" recited by claims 7, 8, 9, 12, 15, 16 and 17 of plaintiff's patent (element 4, above).

This leaves for consideration the "substantially imperforate casing" (element 1, above). With respect to this element, claims 2, 3, 7, 8, 9, and 12 recite

"a substantially imperforate casing (container) defining a (drying) chamber",

while claims 16 and 17 call for

"said casing including an imperforate wall openly facing said (perforate wall in said) drum".

Defendant contends that in view of the opening in the chamber wall of its machine leading to the heater bypass tube, defendant's machine cannot be said to have a "substantially imperforate" casing. It is the contention of plaintiff that the term "substantially imporforate" or "imperforate" means imperforate *to the ambient or outside atmosphere* and does not encompass holes or openings which do not permit a flow of air between the inside and outside of the machine. These respective contentions squarely create an issue as to the meaning of the term.

■■ It is well established that ambiguous claims of a patent "must be construed fairly, reasonably, and consistently, as part of the entire instrument, *in the light of the invention disclosed,* and, where possible, so as to sustain the patent

and protect the real invention". (Emphasis supplied.) 69 C.J.S. Patents § 204a. This general principle is limited, however, by the rule that

"The claim of a patent must be read in the light of the invention disclosed and cannot be given a construction broader than the teachings of the patent as shown by the drawings and specifications." Blanc v. Curtis, 6 Cir., 1941, 119 F.2d 395, 397.

■ In other words, claims will be held invalid when they overclaim the invention, Cold Metal Process Company v. Republic Steel Corporation, 6 Cir., 1956, 233 F.2d 828; and

"Although claims must be read and construed in the light of the specifications and so liberally interpreted as to uphold and not destroy the right of the inventor in the substance of his invention, it is not permitted to read into the claims limitations or qualifications not disclosed in the patent in order to narrow it and save such claims where it appears that the inventor sought a broader monopoly than justified by his invention". Patrol Valve Co. v. Robertshaw-Fulton Controls Co., 6 Cir., 1954, 210 F.2d 146, 152.

As has been shown, the invention disclosed by plaintiff's patent, in view of the prior art, particularly Bradley, lies in the arrangement of the old elements, whereby a new method of operation is achieved, i. e., where the moisture evaporated from the clothes is moved to the water wall condenser simply because of the existing vapor pressure differential and *not* by reason of a directional or "sequential" flow of the air brought about in whole or in part by fans, channels, ducts and baffles.

■ Since the claims in issue do not contain an *express* limitation in accord with the invention, the court must, pursuant to the rules of construction, stated above, construe any ambiguous terms in the claims in the light of and as limited

to the disclosed invention in order to sustain such claims.

Construing the terms "substantially imperforate casing" (claims 2, 3, 7, 8, 9 and 12) and "imperforate wall" (claims 16 and 17) in such a manner, it appears that these terms must be given a very strict construction so as to exclude any perforations, holes or openings which are designed or utilized to create a directional or sequential flow of the air inside the drying chamber.

In defendant's machine, the opening in the wall of the drying chamber leading to the heater bypass duct clearly serves primarily to permit the air to be circulated through the drying chamber and the heater duct. In other words, the essential function of such opening relates precisely to the directional or sequential air flow excluded by the invention disclosed in plaintiff's patent.

For the above reasons, this court finds that defendant's machine does *not* utilize the "substantially imperforate casing" (or walls thereof) recited by claims 2, 3, 7, 8, 9, 12, 16 and 17 (element 1, supra) and therefore does not infringe such claims.

This leaves for consideration claim 15, which is *not* limited to an "imperforate" casing but very broadly claims "a casing enclosing said tumbler to define a drying chamber for said fabrics", and therefore extends to open as well as closed systems.

This court is of the opinion that all terms of claim 15 are clear and unambiguous, but are so broad that they cannot reasonably be construed so as to be confined to the invention disclosed by plaintiff's patent. Claim 15 thus overstates the invention and claims a greater monopoly than that to which the inventor was entitled.

Pursuant to the above, this court is of the opinion that claim 15 is invalid.

In conclusion, this court finds that defendant's machine does not employ the "random flow" of air which constitutes the essence of the invention disclosed by plaintiff's patent. Defendant's machine, therefore, cannot be found to infringe any claims of plaintiff's patent.

Summary

Pursuant to the above discussion, this court concludes:

1. Claims 2, 3, 7, 8, 9, 12, 16 and 17 of plaintiff's patent No. 2,717,456 are valid.

2. Claim 15 of such patent is invalid.

3. Claims 2, 3, 7, 8, 9, 12, 16 and 17 of plaintiff's patent are not infringed by defendant's machines, models CDF, CDH and CDK.

An appropriate order may be submitted.

Additional findings of fact and conclusions of law in accord with this opinion may be submitted by counsel for both parties on or before April 21, 1961.