The MAYTAG COMPANY, a corporation, Plaintiff-Appellant,

v.

The MURRAY CORPORATION OF AMERICA, a corporation, Defendant-Appellee.

No. 14728.

United States Court of Appeals Sixth Circuit.

June 5, 1963.

Patrick H. Hume, Chicago, Ill. (Patrick H. Hume, Clyde F. Willian, Byron, Hume, Groen & Clement, Chicago, Ill., on the brief), for appellant.

Arthur W. Dickey, Detroit, Mich. (Arthur W. Dickey, Robert L. Boynton, Harness, Dickey & Pierce, Detroit, Mich., on the brief), for appellee.

Before CECIL, Chief Judge, WEICK, Circuit Judge, and TAYLOR, District Judge.

CECIL, Chief Judge.

The plaintiff-appellant, The Maytag Company, brought this action in the United States District Court for the Eastern District of Michigan, Southern Division, against the defendant-appellee, The Murray Corporation of America, for infringement of a patent. The parties will be referred to as plaintiff and defendant, respectively.

The patent in question, No. 2,717,456, was issued to Thomas R. Smith and assigned by him to the plaintiff. The defendant denied infringement and charged that the patent was invalid. The District Judge found the patent to be valid, except for claim 15 which he held to be too broad and an over statement of the invention. He found further that there was no infringement and the complaint was dismissed. The plaintiff appeals from the findings of the court that claim 15 was invalid and that there was no infringement. The defendant urges this Court to sustain the judgment of the District Court either on the ground of invalidity or non-infringement. The trial judge found that claims 2 and 3 of the patent were not infringed by virtue of being limited to the specific type of heating means shown in the patent. The plaintiff did not appeal from the findings of the court on these two claims.

The defendant did not file a cross-appeal and the plaintiff claims that the question of invalidity can not now be raised on this appeal. We hold that this question is properly before us. Bede v. Baker & English, Inc., 274 F.2d 833, 835, C.A. 6; Stelos Co. v. Hosiery Motor-Mend Corp., 295 U.S. 237, 239, 55 S.Ct. 746, 79 L.Ed. 1414; Merco Nordstrom Valve Co. v. W. M. Acker Organization, Inc., 131 F.2d 277, C.A. 6; Guiberson Corp. v. Equipment Engineers, Inc., 252 F.2d 431, 432, C.A. 5; Graham v. Cockshutt Farm Equipment, Inc., 256 F.2d 358, 359, C.A. 5.

The paramount question in this case, as stated by counsel for plaintiff, is infringement. While an affirmance of the District Court on the ground of non-infringement would dispose of the appeal, the Supreme Court has said that due to the greater public importance of the validity of a patent it is the better practice to inquire fully into that issue. Sinclair & Carroll Co., Inc. v. Interchemical Corporation, 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644. We will consider first the question of validity.

The subject of the plaintiff's patent and the accused devices of the defendant all involve clothes driers of the type commonly used in the home. The defendant has made, sold and used three models of its drier, which are identified as CDF, CDH and CDK. The parties agree that all three models are essentially the same in respect to the particulars material to this action. They will be referred to as the "accused device."

The machines of both parties operate as "closed" systems and we will limit our discussion to that type of drier, although there is a type that operates as an "open" system. Briefly stated, the essential feature of the closed system is that the atmosphere within the drier is enclosed from the outside atmosphere and heated to evaporate moisture which is removed by a condenser disposed internally of the system. The open system draws air from outside the machine itself, which is sometimes referred to as ambient atmosphere. This outside air is heated, mingled with the clothing to be dried and then expelled to the outside of the washer.

The plaintiff's patent is known as a combination patent and is admittedly composed of old elements. The crucial elements of this combination are: 1. A substantially imperforate casing defining a chamber; 2. A tumbler or drum to agitate the clothing; 3. Walls of such casing which openly face the tumbler or drum; 4. Means for heating the chamber; 5. A water film condenser.

The requisites for the validity of a patent are novelty, utility and invention. Aluminum Company of America v. Sperry Products, Inc., 285 F.2d 911, 917, C.A. 6, cert. denied, 368 U.S. 890, 82 S.Ct. 139, 7 L.Ed.2d 87. "The combination of old parts or elements, in order to constitute a patentable invention, must perform or produce a new and different function or operation than that theretofore performed or produced by them; it is not sufficient that the combination be superior to what went before in producing a more convenient

and more economical mechanism." Bede v. Baker & English, Inc., supra, 274 F.2d at 839, citing General Motors Corp. v. Estate Stove Co., 203 F.2d 912, 917, C.A. 6; Sec. 103, Title 35, U.S.C.

The defendant claims that the patent in suit is lacking in invention by reason of prior art. The test of invention where old elements are used in the alleged invention is whether those elements are used in a manner different from the previously known use in such a way that the alleged invention would not have been obvious to one skilled in the art. Allied Wheel Products v. Rude, 206 F.2d 752, 760, C.A. 6; Aluminum Company of America v. Sperry Products, Inc., supra; Ohmer Fare Register Co. v. Ohmer, 238 F. 182, 186–187, C.A. 6; Wintermute v. Hermetic Seal Corporation, 279 F.2d 60, 62, C.A. 3. Invention under this test is a question of fact. Sterling Aluminum Products, Inc. v. Bohn Aluminum & Brass Corp., 298 F.2d 538, 539–540, C.A. 6; Wickman v. Vinco Corporation, 288 F.2d 310, 312, C.A. 6; Cold Metal Products Company v. E. W. Bliss Company, 285 F.2d 244, 248, C.A. 6, cert. denied, 366 U.S. 911, 81 S.Ct. 1085, 6 L.Ed.2d 235; Aluminum Company of America v. Sperry Products, Inc., supra; Stubnitz-Greene Spring Corp. v. Fort Pitt Bedding Co., 110 F.2d 192, 196, C.A. 6; Ohmer Fare Register Co. v. Ohmer, supra, 238 F. at 187; Schafer v. Watson, 109 U.S.App.D.C. 360, 288 F.2d 144, 145, C.A.D.C.; Rota-Carb Corporation v. Frye Manufacturing Company, 313 F.2d 443, 444, C.A. 8.

The patent in suit, as issued, sets forth seven objects of the invention as claimed by Mr. Thomas R. Smith, its inventor. Summarizing these objects, briefly, it may be stated that the inventor's contribution to the prior art of "closed system" laundry driers is: (1) The condensation of moisture and the elimination of lint by the utilization of a water film condenser while relying completely on vapor pressure to circulate the air by "random flow," and (2) thereby, the elimination of the need for baffles, protective shields and channeling

ducts which increased the cost of the drier and accumulated lint under unsanitary and dangerous conditions.

Consideration of the status of the prior art of closed laundry driers and its relation to the patent in suit raises a close question of fact as to whether Mr. Smith's device achieved invention. The trial judge carefully considered all of the evidence with reference to prior art, particularly the Bradley patent, the claims of the parties and the law applicable to the facts. His opinion is reported at 193 F.Supp. 535. The trial judge found that the specification of the patent in suit disclosed the invention contended for by plaintiff. He further found "In plaintiff's patent a new and surprisingly simple method of operation is disclosed for the first time. Although all the structural elements are old, in the peculiar combination disclosed by the patent they cooperate in a new and different manner, bringing about a surprising result which the prior art inventors were unable to conceive or anticipate." Id. 193 F.Supp. at 541.

■ The above quoted finding is a factual finding and describes invention. We cannot say that this finding of fact is clearly erroneous. Findings of fact of the trial court in a patent case cannot be set aside unless clearly erroneous. Rule 52(a), F.R.C.P.; Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 336 U.S. 271, 274, 69 S.Ct. 535, 93 L.Ed. 672; Aluminum Company of America v. Sperry Products, Inc., supra, 285 F.2d at 917; Sterling Aluminum Products, Inc. v. Bohn Aluminum & Brass Corp., supra, 298 F.2d at 539; General Electric Company v. Sciaky Bros., Inc., 304 F.2d 724, 731, C.A. 6; Jiffy Enterprises, Inc. v. Sears, Roebuck & Co., 306 F.2d 240, 243, C.A. 3, cert. denied, 371 U.S. 922, 83 S.Ct. 289, 9 L.Ed.2d 230, citing R. M. Palmer Company v. Luden's Inc., 236 F.2d 496, 498, C.A. 3; Hoge Warren Zimmerman Co. v. Nourse & Co., 293 F.2d 779, 780, C.A. 6; Thermo King Corporation v. White's Trucking Service, Inc., 292 F.2d 668, 678, C.A. 5; Welsh Co. of California v. Strolee of California, Inc., 290 F.2d 509, 511, C.A. 9.

■ We sustain the finding of the trial court that the patent in suit is valid as to claims 7, 8, 9, 12, 16 and 17.

The terms of claim 15 of the plaintiff's patent (plaintiff's Ex. 1A), which the District Court held to be invalid, are obviously so broad that they cannot be construed so as to be confined to the invention disclosed by plaintiff's patent (No. 2,717,456). As the trial judge said, this claim would embrace an "open" as well as a "closed" system drier. For the reason that claim 15 overstates the invention and claims a monopoly greater than that to which the inventor is entitled, we conclude that the claim is invalid.

Plaintiff alleges that defendant has infringed plaintiff's patent by manufacturing, selling and using clothes driers embodying his patented invention. Specifically, plaintiff asserts that defendant's commercial clothes drier models CDF, CDH and CDK infringe upon claims 7, 8, 9, 12, 15, 16 and 17. (Claim 15 alleged to have been infringed has been disposed of previously in this opinion.)

The District Court determined that the accused device did not infringe. On this appeal the plaintiff contends that the defendant's machine comes within the plain scope of the claims alleged, and, therefore, that infringement is established. The plaintiff further asserts that the accused device and the patented machine are, for all material purposes, structurally and functionally equivalent. It claims that infringement cannot be avoided by adopting a subcomponent (here a blower heater bypass tube) which is not critical to the patented invention.

We turn then to the general principles of patent infringement law applicable to the facts of this case. The Supreme Court has defined an infringement as "a copy of the thing described in the specification of the patentee, either without variation, or with such variations as are consistent with its being in substance the same thing. If the invention of the

patentee be a machine, it will be infringed by a machine which incorporates in its structure and operation the substance of the invention; that is, by an arrangement of mechanism which performs the same service or produces the same effect in the same way, or substantially the same way. * * * That two machines produce the same effect will not justify the assertion that they are substantially the same, or that the devices used are, therefore, mere equivalents for those of the other." Westinghouse v. Boyden Power Brake Company, 170 U.S. 537, 569, 18 S.Ct. 707, 723, 42 L.Ed. 1136. Cited in Aluminum Company of America v. Sperry Products, Inc., supra, 285 F.2d at 923.

The statutory enactment on infringement is Sec. 271(a), Title 35, U.S.C.: "Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent." This infringement provision was first enacted in the 1952 patent statute. It left intact the entire body of case law on direct infringement. Aro Manufacturing Co., Inc. v. Convertible Top Replacement Co., Inc., 365 U.S. 336, 342, 81 S.Ct. 599, 5 L.Ed.2d 592, rehearing denied, 365 U.S. 890, 81 S.Ct. 1024, 6 L.Ed. 2d 201.

■ The question of infringement is generally regarded as a question of fact. Hamilton Mfg. Corp. v. Toledo Guild Products, 210 F.2d 237, 238, C.A.6; Aluminum Co. of America v. Thompson Products, Inc., 122 F.2d 796, 799, C.A.6. Accordingly, upon review of the trial court's determination of no infringement, the clearly erroneous rule, Rule 52 (a), F.R.C.P., is applicable. See also Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 609–610, 70 S.Ct. 854, 94 L.Ed. 1097.

■ Proceeding then to determine whether the lower court was clearly erroneous, we first consider the claims alleged to be infringed. "In determining whether an accused device or composition infringes a valid patent, resort must be had in the first instance to the words of the claim. If accused matter falls clearly within the claim, infringement is made out and that is the end of it." Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 607, 70 S.Ct. 854, 855, 94 L.Ed. 1097. See Parmelee Pharmaceutical Company v. Zink, 285 F.2d 465, 469, C.A.8.

In determining whether the accused device reads within the claims, we look at claim 9 which is fairly representative of all the claims in issue. Claim 9 provides:

"A drier for damp clothing, comprising a substantially imperforate casing defining a chamber and having an access opening therein, a closure for such opening, a tumbler in said chamber for agitating the clothing, said casing comprising walls openly facing said tumbler, means for heating said chamber to evaporate the moisture in the clothing, means for conducting cooling water in a relative thin and wide film over the interior of a portion of said walls to condense the evaporated vapor, and means for directing the cooling water and condensate to drain."

Upon a reading of these claims, it is apparent that the Maytag drier consists of the following essential elements or component parts previously enumerated: (1) A substantially imperforate casing defining a chamber. (2) A tumbler or drum to agitate the clothing. (3) Walls of such casing which openly face the tumbler or drum. (4) Means for heating the chamber. (5) A water film condenser.

In both the plaintiff's and defendant's machines, the drying operation is accomplished by the recirculation of heated air through the perforated tumbler and wet fabrics, past a water film condenser that runs from a side position of the stationary casing in a quiescent wide film to a drain at the bottom. This water film is in an open confronting relation to the perforated tumbler. In the plaintiff's machine this water film is used for the elimination of lint. The plaintiff's patented machine uses no mechanical

means for the circulation of air. Rather, circulation is accomplished by the vapor pressure difference—the hot, moisture laden air naturally moving towards a cooler surface. No ducts or baffles are employed to channel the air. No forced air circulation is used. This operation is characterized as "random flow."

The defendant's machine provides a fan or a pump for recirculating the air through a bypass at the top of the casing, in which the heater is installed. This fan returns the air into the chamber after it has been reheated in the bypass tube. By this forced circulation of air through the heater bypass direction is imparted to the flow of air within the chamber. Defendant characterized this method as "sequential flow." Up to eighty percent of the lint is collected on a lint screen at the opening of this heater bypass. The remaining twenty percent of the lint moves with the moisture being condensed at the water film and is discharged out the drain. The water film condenser in the accused device is similarly situated and operates in the same manner as the plaintiff's water film.

Considering the essential elements enumerated in the claims, therefore, the defendant's machine has a tumbler in open confronting relationship to a water film condenser, elements 2, 3 and 5. The elements for heating the chamber (element 4) are in a bypass tube or channel separate from the drying operation. Claim 9, previously reproduced as a representative claim, says "means for heating said chamber to evaporate the moisture in the clothing." Therefore, the location of the heater is not relevant. Element 4 is present in the accused device, since the drying function is being performed by some means for heating.

Issue is joined, however, on element 1, "substantially imperforate casing defining a chamber." Defendant contends that since there is an opening in the chamber wall of its machine leading to and from the heater bypass tube, the accused machine cannot be said to have a "substantially imperforate casing."

Contrary to this interpretation the plaintiff contends that the term "substantially imperforate" means imperforate to the *ambient* or *outside atmosphere* and does not encompass holes or openings which allow air to be recirculated through chambers and ducts within a closed system.

The crux of the infringement controversy is the definition of the language "substantially imperforate casing." [1] In the construction of this term, Judge Freeman found "that defendant's machine does *not* utilize the 'substantially imperforate casing' (or walls thereof) recited by claims * * * 7, 8, 9, 12, 16 and 17 (element 1, supra)." Maytag Company v. Murray Corporation of America, D.C., 193 F.Supp. 535, 544.

In the laundry drier field the art is crowded. This is not the case of a pioneer patent. This is a combination patent consisting of a variety of old elements. The patentee was a narrow improver. Accordingly, the patentee cannot prevent others from making improvements on the prior art unless they use substantially the very novelty which is the basis of his patent. National Latex Products Company v. Sun Rubber Company, 274 F.2d 224, C.A.6, cert. denied, 362 U.S. 989, 80 S.Ct. 1078, 4 L. Ed.2d 1022; Remington Rand, Inc. v. Meilink Steel Safe Co., 140 F.2d 519, 521, C.A.6; Industrial Instrument Corporation v. Foxboro Company, 307 F.2d 783,

1. Claim 7: "* * * a substantially imperforate container * * * defining a drying chamber. * * *"

Claim 8: "* * * a substantially imperforate casing * * * defining a chamber. * * *"

Claim 9: "* * * a substantially imperforate casing defining a chamber. * * *"

Claim 12: "* * * a substantially imperforate casing defining a drying chamber. * * *"

Claims 16 and 17: "* * * said casing including an imperforate wall. * * *"

785, C.A.5, rehearing denied, 310 F.2d 686.

"The claim of a patent must be read in the light of the invention disclosed and cannot be given a construction broader than the teachings of the patent as shown by the drawings and specifications." Blanc v. Curtis, 119 F.2d 395, 397, C.A.6. See Aluminum Co. of America v. Thompson Products, Inc., supra, 122 F.2d at 800.

Considering the invention disclosed and the state of the prior laundry drier art, this disputed term must be given a strict construction. Fife Manufacturing Company v. Stanford Engineering Co., 299 F.2d 223, 226, C.A.7. "Substantially imperforate casing" would exclude any perforations, holes or openings which are designed or utilized to direct an air flow outside the drying chamber.

We hold that the trial court's finding that the term "substantially imperforate" meant devoid of any openings in the drying chamber was correct. The openings at the entrance to the blower-heater bypass tube, where the lint screen was located, and at the exit, where the heated air was returned to the chamber, "perforated" the main casing of the accused device. Accordingly, the accused device clearly does not fall within the asserted claims.

Having determined that the "accused device" does not read upon the claims of the patent, the plaintiff can prevail on the infringement issue only if the doctrine of equivalents is applicable. Accordingly, we proceed to the consideration of equivalency.

The Supreme Court has recently reaffirmed the continuing validity of the Doctrine of Equivalents. Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097. At p. 607, 70 S.Ct. at p. 855 the Court said "courts have also recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for—indeed encourage —the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law. One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement. To prohibit no other would place the inventor at the mercy of verbalism and would be subordinating substance to form. It would deprive him of the benefit of his invention and would foster concealment rather than disclosure of inventions, which is one of the primary purposes of the patent system." See Royal Typewriter Co. v. Remington Rand, Inc., 168 F.2d 691, 692, C.A.2, cert. denied, 335 U. S. 825, 69 S.Ct. 50, 93 L.Ed. 379.

The essence of the doctrine of equivalents is that one may not practice a fraud on a patent " * * * if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape," Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., supra, 339 U.S. at 608, 70 S.Ct. at 856. "What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect. In determining equivalents, things equal to the same thing may not be equal to each other and, by the same token, things for most purposes different may sometimes be equivalents. Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform. An im-

portant factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was." Id. 339 U.S. at 609, 70 S.Ct. at 856.

Speaking specifically about infringement of a combination patent, the Sixth Circuit has stated in Aluminum Company of America v. Sperry Products, Inc., supra, 285 F.2d at 923: "[i]nfringement of a combination patent occurs only through a combination comprising every one of its elements or a mechanical equivalent." Further, an improver could not appropriate the basic patent of another, for the improver without a license is an infringer.

Id. 285 F.2d at 924, the court said: "If the infringing device performs the same function as the patented device, it is immaterial that it also performs some other function. It is still nonetheless an equivalent of the patented device, and an appropriation of the patented invention."

The essence of the invention disclosed by the plaintiff's patent was the "random flow" of air, initiated by the vapor pressure difference. Plaintiff asserts that the utilization of fans and duct work is non-essential since the drying process is actually completed by the flow of air caused by the vapor pressure differential.

The trial court determined that in the accused device the drying process was accomplished by reason of a directional or "sequential" flow of air. The court found that the defendant did not rely on the vapor pressure difference to accomplish this process.

The question of equivalency then is this: Although direction is imparted to the air flow by the blower in the bypass tube, does the defendant still rely principally upon the vapor pressure differential to accomplish the drying process in his machine?

The range of equivalents depends upon and varies with the degree of invention. Continental Paper Bag Company v. Eastern Paper Bag Company, 210 U.S. 405, 415, 28 S.Ct. 748, 52 L.Ed. 1122. Here where the patent is narrow and the art is crowded the range of equivalents is similarly narrow. Parmelee Pharmaceutical Company v. Zink, supra, 285 F.2d at 472; Fife Manufacturing Company v. Stanford Engineering Co., supra, 299 F.2d at 226. In considering the range of equivalents we consider the prior art as one of the determinative factors. It is apparent to one skilled in the laundry drier art that two branches have evolved.

The first type is that of the forced air circulation type. Fans or blowers are situated outside the cylindrical fixed casing in which the clothes tumbler rotates. The necessary accompanying equipment of housing and duct work acts to channel the air into, through, and out of the main casing in which the clothes tumbler is operating. This type of machine is best represented by the prior Constantine (No. 2,590,295) and Pugh (Nos. 2,451,692 and 2,453,859) patents. The accused device follows this branch of the prior art.

The second category of the prior art eliminates forced air circulation. This eliminates the accompanying equipment of blower, housing and duct work which is exterior to the cylindrical casing in which the clothes tumbler rotates. All the necessary elements for the drying process are contained within this imperforate chamber, namely, the clothes tumbler, the heating elements, and the condensing elements. This type of machine is represented by the Erickson et al. (No. 2,701,421), Graham (No. 2,686,372), and Hammel et al. (No. 2,644,245) patents. The machine of the patent in suit is of this type.

We conclude that the patent in suit and the accused device are not equivalent. The two machines operate from entirely different premises. The finding that defendant's machine does not employ the "random flow" of air which constitutes the essence of the invention is correct. The judgment of the District Court is in all respects affirmed.